# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MELVIN A. NEWMAN, | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 08-cv-4240 |
| | ) |
| DONALD GAETZ, | ) |
| | ) Judge Robert M. Dow, Jr. |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

On November 8, 2012, the Court granted Petitioner Melvin Newman's petition for a writ of habeas corpus and ordered that the State of Illinois release or retry him within 180 days [78]. On December 3, 2012, Respondent simultaneously filed a timely notice of appeal with the Seventh Circuit, seeking review of the Court's decision, and a motion for stay of judgment pending appeal [79], maintaining that it should not be required to retry Petitioner before resolution of the appeal. Petitioner has both objected to the stay motion and cross-moved for Petitioner's release on recognizance [96]. For the reasons set forth below, the Court grants in part and denies in part Respondent's motion for stay of judgment pending appeal [79] and grants Petitioner's cross-motion for release on recognizance without surety [96] subject to the conditions set forth herein.

I.  **Applicable Standards**

Consideration of whether to grant a stay and whether to grant a successful habeas petitioner's motion for release on bond both are controlled by Federal Rule of Appellate Procedure 23(c) as well as the U.S. Supreme Court's decision in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Under Rule 23(c), there is a presumption of release pending appeal where a

1

petitioner has been granted habeas relief. However, the presumption can be overcome if the traditional factors regulating the issuance of a stay weigh in favor of granting a stay. See *O'Brien v. O'Laughlin*, 557 U.S. 1301 (2009) (Breyer, J., in chambers). These factors are: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties in the proceeding; and (4) where the public interest lies. *Hilton*, 481 U.S. at 778; *O'Laughlin*, 557 U.S. at 1301. The *Hilton* Court summarized how to weigh whether the factors rebut the Rule 23's presumption as follows: "Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release." *Hilton*, 481 U.S. at 778. Among the matters that a court should consider are the possibility of the petitioner's flight; any showing by the respondent of a risk that the petitioner will pose a danger to the public if released; and the state's interest in continuing custody and rehabilitation pending a final determination of the case on appeal. *Id.* at 777.

## II. Analysis

In granting habeas relief, the Court concluded that Petitioner's counsel provided constitutionally ineffective assistance by failing to investigate and raise the issue of his fitness to stand trial, even though counsel received a stack of records detailing Petitioner's mental limitations, including a Social Security Administration document concluding that Petitioner was mentally retarded and a psychologist's evaluation that put Petitioner's IQ in "the national percentage rank of 1." Cognizant that *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), "chang[ed] the landscape that applies to ineffective assistance of counsel habeas cases," prior to issuing its

opinion granting habeas relief, this Court looked to guidance from the Seventh Circuit on how to proceed and applied the procedure set forth by the Seventh Circuit in *Mosley v. Atchison*, 689 F.3d 838 (7th Cir. 2012). In its decision, the Court limited its § 2254(d) analysis to the record before the state court at the time it reviewed the claim and only considered the evidence adduced at the evidentiary hearing to determine whether Petitioner was being held in violation of the constitution pursuant to § 2254(a).

Courts have determined that "a substantial case on the merits" is "largely interchangeable" with establishing "reasonable probability" or a "fair prospect" of success, or that "serious legal questions * * * [are] raised." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). The standard requires more than demonstrating a "better than negligible" or "a mere possibility" of success on appeal, but something less than establishing that success is "more likely than not." *Id.* Respondent acknowledges that the Court "analyzed petitioner's claims within the proper legal framework," but maintains that the state court's decision does not lie "well outside" the boundaries of permissible differences of opinion and that the Court came to "an erroneous legal conclusion."

In addressing these issues, Respondent points out the "dissonance" associated with a district court's consideration of "the likelihood of being reversed." On the one hand, the Court would not have issued its decision granting habeas relief unless it believed the decision to be correct and consistent with the controlling decisions of the Supreme Court and the Seventh Circuit as well as the applicable statutes. On the other hand, the Court appreciates the exacting standards for habeas relief, the relative infrequency with which habeas relief is granted, and Respondent's firmly held view that the Court's decision is incorrect. With that said, however, the Court is not convinced that Respondent's arguments create a reasonable probability that the

Court's decision will be reversed. First, the Court applied the proper legal framework. Second, the state trial court did not merely make a questionable ruling; rather, in this Court's view, the ruling "evinced a fundamental misunderstanding of what could constitute a mental deficiency." Further, the Court's reliance on analogous Seventh Circuit decisions in support of its conclusion bolsters its decision. See, *e.g.*, *Wilson v. Gaetz*, 608 F.3d 347 (7th Cir. 2010); *Brown v. Sterns*, 304 F.3d 677 (7th Cir. 2002). Indeed, in its analysis, the Court concluded that Petitioner's trial counsel exerted even less effort on behalf of its client than the attorney in *Brown*, a case in which the Seventh Circuit reversed the district court's denial of a habeas petition and concluded that counsel failed to fulfill his duty to investigate his client's fitness. Finally, the state appellate court's decision that an unrebutted expert report concluding that Petitioner was unfit at trial was "irrelevant" was almost certainly unreasonable.

As the foregoing summary indicates, even without considering what took place at the evidentiary hearing, the Court does not believe that Respondent would likely prevail on appeal. However, when the Court adds to the mix its own observations at the evidentiary hearing, Respondent's case grows weaker, not stronger. Even taking into account Petitioner's recent educational improvements and achievements—as the Court did in its ruling—Petitioner's mental acuity was "noticeably lower than any other witness" who had ever testified before the Court. Additionally, the Court heard extensive testimony from experts on both sides and, as demonstrated in its opinion, considered all of it before concluding that Dr. Kavanaugh's thorough study—undertaken much closer to trial and consisting of a more diverse range of documents and viewpoints—was more credible and ultimately more accurate.

The balance of the remaining factors, to the extent they are even considered when Respondent has failed to demonstrate a substantial case on the merits, weigh in favor of releasing

4

Petitioner (but, as demonstrated below, not necessarily in favor of denying a stay altogether). The injury that Petitioner will suffer by continued detention is undeniably irreparable. The Court notes the presumption of release established by Rule 23(c) and further notes that every day Petitioner spends in prison compounds the "substantial harm" that he has suffered on account of imprisonment based upon an unconstitutional conviction. See *Harris v. Thompson*, No. 12-1088 (7th Cir. Feb. 20, 2013) (slip opinion) (modifying State's deadline for retrial, releasing petitioner, and noting that the "harm to [petitioner] is self-evident: Maintaining the status quo increases the length of time she spends in prison on an unconstitutional conviction * * * * Any harm to the State pales in comparison."). The fact that Petitioner already has spent more than 12 years in prison does not mean that the Court can disregard the harm he will suffer from further imprisonment. See also *Hampton v. Leibach*, 2001 WL 1618737, at *2 (N.D. Ill. Dec. 18, 2001). As then-District Judge Williams wrote in addressing similar circumstances:

> It would be intolerable that a custodian adjudged to be at fault, placed by the judgment of the court in the position of a wrongdoer, should automatically, by a mere notice of appeal prolong the term of imprisonment, and frustrate the operation of the historic writ of liberty * * * * The great purpose of the writ of habeas corpus is the immediate delivery of the party deprived of personal liberty' * * * * Certain it is, at least, that the write may not be thwarted at the pleasure of the jailer * * * * Little would be left of this, the greatest of all writs * * * if a jailer were permitted to retain the body of his prisoner during all the weary processes of an appeal * * *.

*U.S. ex rel. Cross v. DeRobertis*, 1986 WL 12590, at *3 (N.D. Ill. Nov. 3, 1986) (quoting Justice Cardozo's opinion in *People ex rel. Sabatino v. Jennings*, 158 N.E. 613 (C.A.N.Y. 1927) (internal quotations omitted). Justice Cardozo's sentiments and Judge Williams' ruling apply with equal force in the present case.

Additionally, the public interest does not tilt the balance in favor of continued incarceration. The public has a significant interest in ensuring that individuals are not

imprisoned in violation of the Constitution. With respect to Petitioner's danger to society, the Court recognizes the seriousness of the murder charge of which Petitioner was convicted, albeit following a constitutionally deficient trial. Yet Petitioner had no record of a violent criminal history prior to his arrest in the case at issue, and Respondent has made no attempt to show that Newman poses a *current* risk, twelve years after the events at issue (for example, there is no indication that he has committed any acts of violence while incarcerated). See also *Hampton,* 2001 WL 1618737 at *2 (noting that the petitioner had no criminal history, not even an arrest, other than the charges that were the subject of the habeas corpus petition); *McCandless v. Vaughn,* 1999 WL 1197468, at *2 (E.D. Pa. Dec. 14, 1999) (finding no current danger resulting from defective seventeen-year-old murder conviction). Indeed, "[i]f the mere fact of having been convicted in the case to which a habeas corpus petition is directed was enough to overcome Rule 23(c)'s presumption of release, the presumption would be meaningless." *Hampton*, 2001 WL 1618737 at *2.

Further, in his 12 years in the Cook County Department of Corrections and the IDOC, Petitioner has not attempted escape, assaulted anyone, or possessed any weapons in the facility. In fact, Petitioner's prison record includes only three disciplinary incidents, all non-violent, during his time in custody. Respondent raises a concern that Petitioner has affiliated himself with a gang (the Gangster Disciples) during his incarceration. But the indication of any gang involvement appears to be minimal—resting on an abbreviation placed on one of Petitioner's prison records. To be sure, gang activity is a proper consideration when considering release, but there is no concrete manifestation of any such activity on the record before the Court. Moreover, the strict conditions of release make it highly unlikely that Petitioner would associate in any fashion with Gangster Disciples or any other gang and carry with them the possibility of swift

revocation of his release if he does. Finally, having heard from multiple witnesses at the evidentiary hearing who described Petitioner as respectful and cooperative and having personally observed Petitioner's conduct during the hearing, the Court does not view Petitioner as a present danger to the community if he is released subject to the conditions set forth below.

The Court also concludes that Petitioner is not a flight risk. He is a 28-year-old mentally retarded individual who has been incarcerated since the age of 16. His mother (Barbara Newman), father (Melvin McLain), maternal grandmother (Loristene Cummings), and aunt (Victoria Kelly) are all long-time residents of Chicago. Petitioner also has a son who lives with Ms. Cummings in Chicago. Additionally, Petitioner, with the aid of his mother, turned himself into police when he learned that he was a suspect in this crime back in 2001. Taking into account Petitioner's noted deficiencies and lack of financial means, it is highly unlikely that Petitioner could successfully flee the jurisdiction of the Court. Additionally, even if the risk were deemed inherent, the Court will set conditions of Petitioner's release, including electronic monitoring, to minimize any such risk. Those conditions will not, however, include a surety. Rule 23(c) permits release "with or without surety." The Court is persuaded that even if Petitioner or a family member had any significant assets—and all indications are that they do not—the other conditions of release are sufficient to assure Petitioner's appearance at all further federal or state court proceedings.

Respondent argues that it "will suffer irreparable injury as a result of having to prosecute an expensive and difficult retrial more than a decade after the crime took place, particularly when such a trial may be rendered unnecessary by a successful appeal." However, the case law holds to the contrary: "[t]he ordinary incidents of litigation—the time and other resources consumed—do not constitute irreparable harm." See *Crist v. Miller*, 846 F.2d 1143, 1144 (7th Cir. 1988); see

7

also *Conkright v. Frommert*, 556 U.S. 1401 (2009) (Ginsburg, J., in chambers) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974), for the proposition that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough"). The Cook County State's Attorney's Office, with over 800 lawyers, has responsibility for retrying this case. While Cook County undoubtedly has a sizeable caseload, the number of attorneys employed by the County alone cuts against Respondent's irreparable injury claim. While it is no doubt true that attention will have to be diverted from "more recent cases to devote to "retrying petitioner's decade-old murder case," the same can be said anytime a court orders a new trial. Even among that relatively small universe of cases, it strikes the Court that this is the kind of case that deserves especially prompt attention, given that it involves a murder charge against a defendant with severe, documented mental impairments who faces decades of imprisonment. Finally, the Court notes that the prior trial lasted only two days and the State's Attorney's Office no doubt retains the complete case file in its possession. To be sure, the wind-up to any retrial may well involve a competency hearing and the trial itself may last longer than two days. But this is not a complex case and the imposition on the State's Attorney's Office is correspondingly minimal in the grand scheme of its mission and resources. This is especially true in view of the unconstitutional defects identified in the Court's November 8 opinion that marred Petitioner's prior trial, which resulted in a conviction for which he has been imprisoned for a dozen years.

Although the Court is not persuaded that Respondent will suffer irreparable injury based on having to dedicate time and resources to Newman's retrial, Respondent's position that a retrial may be rendered unnecessary by a successful appeal merits further consideration. The Court agrees that it is appropriate to permit the State to defer any actual retrial of Newman—if

8

the State choses that path—until the conclusion of its appeal to the Seventh Circuit. As noted above, any attempt to predict the likelihood of reversal of its own decision places the Court in the awkward position of second guessing its own work. But if the Court's decision is reversed on appeal, the State could be forced to retry a matter that never should have been retried, and, even more problematic, that retrial could end in an acquittal before the Seventh Circuit issues a decision on the state's appeal. See, *e.g.*, *DeRobertis*, 1986 WL 12590, at *1 (granting stay pending appeal after noting that "if the court denies their motion to stay, it effectively will have denied the respondents their right to appeal," especially if the deadline for retrial expires before the decision on appeal is rendered). To avoid such a conundrum, the Court draws on a recent Seventh Circuit order setting forth a "reasonable resolution of the competing interests" at stake in circumstances like these. *Harris v. Thompson*, No. 12-1088, Order at 4 (7th Cir. Feb. 20, 2013) (ordering a successful habeas petitioner released from prison pending disposition of the State's petition for certiorari and extending deadline for State to decide whether to retry petitioner). As in *Harris*, the Court will order Petitioner to be released on reasonable conditions while also extending Respondent's time to decide whether to retry Petitioner until 14 days after the Seventh Circuit issues an opinion disposing of the appeal. Recognizing, as the Seventh Circuit did, that "the State should be able to prepare for retrial and [Seventh Circuit] review simultaneously" (*id*.), the State should prepare for retrial (if that is the intended path) while its appeal in the Seventh Circuit is pending so that it can meet the revised deadline for deciding whether to retry Petitioner and proceed to trial as the earliest available trial date. This means that the State and defense counsel can work together toward resolution of any and all pre-trial issues, including competency issues.[1]

---

[1] The Court recognizes that in its prior order, it set a deadline for retrying Petitioner, not simply deciding whether to proceed with a retrial. Upon further reflection, with the benefit of the Seventh Circuit's

**III. Conclusion**

Consistent with the discussion above, the Court grants in part and denies in part Respondent's motion for stay of judgment pending appeal [79]. Specifically, the Court extends the deadline for deciding whether to proceed to a retrial of Petitioner until 14 days after the Seventh Circuit issues a ruling on Respondent's appeal. At the same time, the Court reiterates that if the State's current intention is to retry Petitioner, all pre-trial preparations should move forward, including in regard to Petitioner's competency. In addition, the Court grants Petitioner's cross-motion for release on recognizance without surety [96] but subject to the conditions set forth below. Pursuant to Federal Rule of Appellate Procedure 23(c), Petitioner Melvin Newman is ordered to be released from prison effective at noon C.S.T. on Wednesday, March 13, 2013, and shall be subject to supervision by the United States Probation Officer for the Northern District of Illinois on the following conditions:

1. Petitioner Newman must report to the U.S. Probation Office for the Northern District of Illinois, 55 East Monroe Street, Room 1500, Chicago, Illinois, within 48 hours of his release from the Illinois Department of Corrections facility where he is currently housed – that is, no later than noon C.S.T. on Friday, March 15, 2013. He shall continue to report to the Probation Office periodically as directed by the United States District Court or the Probation Office.

2. Petitioner shall not commit any federal, state, or local crime.

3. Petitioner shall not unlawfully use or possess a controlled substance. The Court may order periodic drug testing if deemed advisable.

4. Petitioner shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

5. Petitioner shall not leave the Northern District of Illinois without the permission of the United States District Court or the Probation Office.

---

guidance in *Harris* and taking into account that the competency issue may complicate pre-trial matters, the Court concludes that it should deny the stay—thereby moving the case forward toward retrial if the Seventh Circuit does not reverse and the State intends to proceed to a retrial—but not set a fixed date by which the actual trial must commence. This resolution also gives proper respect to the assigned state trial court judge in the prioritization of this matter among all of the matters on his or her own docket.

6. Petitioner shall answer truthfully all inquiries by the Probation Office and follow the instructions of the Probation Office.

7. Petitioner shall refrain from excessive use of alcohol.

8. Petitioner shall reside with his mother, Barbara Newman, as third-party custodian and shall notify the Probation Office at least 10 days prior to any change in residence or employment.

9. Petitioner shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

10. Petitioner shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the Probation Office.

11. Petitioner shall permit a Probation Officer to visit him at any time at home or elsewhere and shall permit confiscation of any contraband observed in the plain view of the Probation Officer.

12. Petitioner shall notify the Probation Office within 72 hours of being arrested or questioned by a law enforcement officer.

13. Petitioner shall, as directed by the Probation Office, notify third parties of risks that may be occasioned by his criminal record or personal history or characteristics and shall permit the Probation Office to make such notifications and to confirm Petitioner's compliance with such notification requirement.

14. Petitioner shall be placed on electronic monitoring under the standard conditions for electronic monitoring employed by the Probation Office in this district.

15. Prior to March 13, 2013, counsel for Petitioner shall provide to the Court and the Probation Office all contact information, including address and telephone number(s), for Barbara Newman. In the event that Petitioner believes another relative would be a more suitable third party custodian, counsel for Petitioner shall file a motion to amend this order as soon as possible.

The Court reserves the opportunity to hold a hearing, on its own motion or on motion of any party, to consider whether to modify these conditions at any time. See *Harris*, Order at 6.[2]

Dated: March 6, 2013

_____
Robert M. Dow, Jr.
United States District Judge

---

[2] Finally, the Court notes that, given Petitioner's noted mental deficiencies, it will be incumbent on Petitioner's experienced habeas counsel to ensure that he understands the current posture of this litigation. In particular, Petitioner must be made aware that his release pending appeal (and possible retrial) may be of short duration and that he may be incarcerated again if Respondent wins on appeal or if Respondent loses on appeal and Petitioner is convicted after a retrial.